# James Boyd Robison, Plff. in Err., *v.* Benjamin Fetterman.

Where an agreement exists between the occupants of adjoining farms, that a partition fence need not be maintained between them, but that each will keep his cattle, etc., from straying on his neighbor's premises, either may maintain an action against the other for damages for trespasses committed by cattle of the other, without the plaintiff's having fenced his premises.

In the absence of an agreement dispensing with the maintenance of a partition fence, a landowner cannot, in view of the legislation of this state, maintain an action for damages for injuries committed on his land by his neighbor's cattle, unless he (plaintiff) has maintained a sufficient fence.

Such fence need not be a statutory fence "four feet and a half high and well staked and ridered," but must be a "neighborly fence" one such as farmers of practical knowledge and experience would consider sufficient to protect the crop from injury by usually orderly cattle.

The taking up by a landowner, under the act of 1705 (Purd. Dig. pp. 1354–1355), or swine running at large, will not bar him from suing the owner of such swine for damages for injuries committed by them.

A judgment in a replevin suit, brought by the owner of swine to recover possession of them from one who had taken them up under the act of 1705, for trespassing on his land, will not affect a suit for damages for the trespass subsequently brought by such landowner (who was defendant in replevin) against the owner of the swine (who was plaintiff in replevin).

(Argued April 11, 1888. Decided May 14, 1888.)

January Term, 1888, No. 92, E. D., before GORDON, Ch. J., PAXSON, GREEN, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Columbia County to review a judgment in favor of plaintiff in an action of trespass, February term, 1885, No. 158. Affirmed.

The nature of the case and the questions presented, are fully stated in the charge of the court below.

At the trial counsel for defendant offered in evidence appearance docket, No. 21, December term, 1884, J. Boyd Robison v. Benjamin Fetterman, summons in replevin for ten shoats or hogs, value $125; issued October 7, 1884. Replevied as within commanded, and summoned the defendant October 8, 1884, and property delivered to plaintiff. So answers John Mourey, sheriff. December 2, 1884, declaration filed. February 9, 1885, judgment for plaintiff *sec. reg.*

Same term No. 44, J. Boyd Robison v. Benjamin Fetterman. Summons in replevin for two hogs or shoats, value $15, issued October 22, 1884. Return of service. December 2, 1884, declaration filed. February 9, 1885, judgment for plaintiff *sec. reg.* Same day amended return of sheriff filed.

By plaintiff's counsel: We object to this offer of evidence.

By defendant's counsel: To show a former recovery. It is in the nature (matter) of a distress and a former trial of all matters relating to the trespasses complained of, so far as the hogs are concerned.

By plaintiff's counsel: I object to the admission of the testimony because: First, there has been no adjudication of the cases at all before any court, and no finding of any amount of damages, and no hearing of the defendant in the replevin as to matters of damages; and second, that this being an action of tort as well as a writ of replevin, there can be no offset between the two actions, and the fact that no judgment has been rendered (on the merits) in the replevin negatives the former recovery that is suggested.

The court rejected the evidence. [1]

The court charged the jury as follows:

This is an action of trespass, brought by Mr. Fetterman against Mr. Robison to recover damages for injuries which the plaintiff claims he sustained by reason of the defendant's cattle

and hogs straying upon his premises sometime in the years 1881 to 1884. It is claimed that at different times trespasses were committed by the defendant's cattle and hogs, and that they destroyed to some extent the plaintiff's crops of corn and wheat.

Of course, the first question for the jury to decide is whether the defendant's cattle and hogs did stray upon the plaintiff's premises; and if that is found in the affirmative, the next question would be what injuries, if any, they committed there. You will also be called upon to inquire whether the plaintiff himself was guilty of negligence, whether he omitted any duty which he ought to have performed in order to entitle him to recover damages for such trespasses. This brings up the question as to the duty of maintaining fences round improved land. Under the rule of what the profession call the common law, the owner of improved land was not bound, in the absence of immemorial usage or express agreement, to fence it against his neighbors; in other words, every man was bound to keep his own cattle and hogs from straying upon the lands of his neighbor; and if they did so stray, he would be liable to his neighbor in trespass for whatever damage was done. It has been decided, however, in this state, in view of our acts of assembly upon the subject of fences, that the owner of improved land cannot recover damages for injuries done thereon by stray cattle or hogs, unless he has inclosed it with a sufficient fence.

[While this is the general rule, it is within the power of the parties, or of the owners or occupiers of adjacent lands, of persons living adjoining to each other, to make a special agreement upon this subject; and if they do agree between themselves that partition fences need not be maintained, but that each will be responsible for his own cattle and hogs, and will prevent them from straying upon the land of the other, that agreement is binding upon them, and, if in violation thereof one permits his cattle or hogs or both or either to stray upon the land of the other, the person so permitting this would be liable in an action of trespass. Was there an agreement between these parties at the time that they took possession of their respective farms that a partition fence need not be maintained between them, but that the defendant would keep his cattle and hogs from straying upon the plaintiff's premises, and that the plaintiff would keep his cattle and hogs from straying upon the defendant's premises? It is alleged upon the part of the plaintiff that there was such

an agreement, and upon the part of the defendant that there was not. This is a question of fact to be decided by you according to the credible testimony in the cause, taking into consideration all the corroborations, if there be any, all the surrounding facts; from the direct testimony and the circumstances you are to ascertain whether there was such an understanding and agreement between the parties. If you find that there was, and that it was not subsequently abandoned, then the plaintiff might recover, in case the defendant's cattle and hogs did actually trespass upon the plaintiff's premises, even though there were not maintained around his improved land what are known as "sufficient fences."] [2]

If, however, there was no such agreement, then it would become incumbent upon the plaintiff to show, in order to recover in this action, that he had maintained around the premises or fields in which he alleges that the trespass was committed what are called "sufficient fences."

Under the statute law, the fence which the owner of improved land was required to maintain around his premises, in order to recover in an action of trespass brought against his neighbor for injuries done upon the plaintiff's land by that neighbor's cattle or hogs or other beasts, was a fence "four feet. and a half high and well staked and ridered;" and a question has at different times been raised as to whether or not the land-owner must maintain a fence of that kind, in order to be able to recover in an action of trespass for injuries done by straying cattle and hogs. Fortunately, that question has been decided by the learned president judge of this court, whose decisions always carry with them the greatest weight wherever they are cited; and we have no doubt that his decision of this question will be accepted as the law controlling this particular case; and he has stated the principle so clearly and distinctly that we cannot do better than to read it to you from his judgment in the case of Race v. Snyder, 10 Phila. 533. Judge ELWELL there said: "In construing the statutes upon this subject, it was held by Judge ADDISON, three fourths of a century ago, that if a fence, though what was not called lawful, be what is called neighborly, and sufficient to keep out cattle not breachy, that trespass will lie for injury by the cattle of another. This view of the law has not been rejected as unsound in any case of which I have knowledge, in which the question was distinctly raised. I adopt

it as substantially correct, and instruct you that if the defendant's cattle broke through or jumped over the fence between the plaintiff' corn field and the defendant's woods, and damaged the plaintiff's corn, he is entitled to recover for the damage done, unless you are satisfied from the evidence that the fence was not such as farmers of practical knowledge and experience would consider as sufficient to protect the crop from injury by usually orderly cattle. If it was such a sufficient fence, for the damage done while in that condition the plaintiff may recover, although it was not made of logs or rails or posts and boards, and was not 'four and a half feet high and well staked and ridered.' On the contrary, if not sufficient, judged by the standard before mentioned, no recovery can be had for the injury done while in that condition."

Now, in view of this statement of the law in regard to what kind of fence a man must maintain, in the absence of an agreement between him and the other party, in order to recover damages occasioned by trespass committed by the other's straying cattle or hogs, you will inquire whether the plaintiff did maintain such a fence as the learned judge has therein described as "neighborly." You will inquire as to the character of the fence and as to the character of the defendant's cattle, whether they were "usually orderly" or "breachy;" you will inquire also whether or not, even though you should find that there was originally an agreement between these parties that no fence need be maintained, that agreement had been abandoned by them, and they had undertaken to keep up proper and sufficient fences; for, even though there was originally an agreement or understanding between them that partition fences need not be maintained, still, if subsequently the plaintiff abandoned that agreement and undertook to erect a fence for the purpose of inclosing his improved land, he would be required to erect what the judge has described as a "sufficient fence," "a neighborly fence."

[Upon this question, you will take into consideration the positive testimony of the witnesses as to the condition of the fence and the testimony of witnesses as to their opinion with regard to the character of the fence; these opinions are not conclusive upon you; they are merely expressions of the judgment of the witness from his knowledge of the fence; they are, however, competent for you to consider, in connection with all the other testimony and the circumstances of the case.] [3]

In general terms, we instruct you that if there was no agree-ment between these parties as to the partition fences, and the plaintiff did not maintain a sufficient fence according to the rules as we have already stated them, then the plaintiff cannot recover in this action.

[It is claimed further upon behalf of the defendant that the plaintiff's action is barred by reason of the fact that he took up, upon one or two occasions, some hogs of the defendant; that ques-tion has been raised during the progress of the trial, and has been decided against the defendant's proposition. We hold that there was nothing in that act of the plaintiff which bars his present suit; it is not necessary at this time to discuss the reasons for that conclusion; it is enough to say that such is the conclusion of the court upon the law involved in that question.] [4] ·

[It is said that there was, in September, 1884, a settlement be-tween the plaintiff and the defendant; and it is claimed by the defendant that this settlement was a final settlement of all mat-ters between them at that time. If that is so, if this was a final settlement of all matters and claims whatsoever in dispute be-tween these parties here, it would undoubtedly be conclusive against any claim for damages prior to that time. If, however, it was only a settlement of their accounts, it would not be conclu-sive of the plaintiff's claim for damages for trespass alleged to have been committed by the defendant's cattle and hogs. It is for you to determine from the testimony what was settled be-tween the parties at that time.] [5]

While that settlement might not have been conclusive of all claims between the parties, it is nevertheless a pertinent fact for your consideration in deciding as to the genuineness of the plaintiff's claim up to that time; if they came together and had a settlement and no claim was made for damages for the tres-pass done by these cattle and hogs, no allegation then that a tres-pass had been committed by them, it would be a fact, a circum-stance, while not conclusive against the plaintiff, proper to be considered by the jury in determining as to the genuineness of his claim. In case of a conflict in the testimony, this might give you some aid in ascertaining whether or not there had been as a matter of fact any substantial injury done or whether as a · matter of fact the plaintiff was then of opinion that he had any right to maintain an action for such injury. It is a fact in the testimony to be considered by the jury, and they will give to *i*

such weight as they think it is under all the circumstances entitled to.

If you should find that the plaintiff is entitled to recover, then arises the question of amount. Under all the testimony in this case, we think your verdict, if you find for the plaintiff, should be compensation for the injury sustained by him; we discover no facts in the case which would warrant the giving of what are known as punitive damages, or punishment for the injury done. Compensation for the loss occasioned to the plaintiff by the trespassing of the defendant's cattle and hogs would be what the plaintiff is entitled to recover, if he is entitled to recover anything. You would ascertain what was the value of the property destroyed at that place, the value of the corn in the shock and of the wheat in the sheaf; of course, the plaintiff would not be entitled to recover what would be the value of the wheat or of the corn at the mill, but what was the value as it stood in the shock at the time that it is alleged to have been injured by the defendant's cattle and hogs. In estimating the damages which the plaintiff has sustained, you should be careful to be satisfied that the damages which enter into the estimate which has been given by the witnesses, who do not testify from their own personal knowledge of the injuries, were occasioned by the defendant's cattle and hogs; there has been testimony here as to other cattle and hogs straying in the neighborhood; of course, the defendant cannot be held responsible for any injuries not committed by his cattle or hogs; and you will bear that in mind in your consideration of the testimony given by the witnesses as to estimates made by them of the damage done.

These are all the instructions that we feel called upon to give, except such as shall be re-required by the answers to the defendant's points.

The defendant requests us to charge:

1. That the law regulating the mode of proceeding against swine running at large or suffered or permitted to run at large by the owner and doing damage to crops within an inclosure is that of the act of 1705 and of its supplement or supplements in force in this county, under which the plaintiff took up the defendant's hogs, and attempted to seek redress for the injury done to him by the defendant's hogs in the mode prescribed in that act; and that having elected to pursue his remedy under that statute, he cannot recover in this action.

*Ans.* We answer that point in the negative. [6]

2. The undisputed testimony of both the plaintiff and the defendant being that a settlement was had between them on September 22, 1884, and that no trespass or damage was done by the defendant's cattle or hogs after that time, the presumption of law is that all matters in dispute or at variance between the parties were merged in that settlement, and cannot be opened afterward, and therefore the plaintiff cannot recover.

*Ans.* We answer that point also in the negative. In connection with it, we call your attention particularly to the instructions and suggestions we have already made with regard to the force and effect of that alleged settlement. [7]

3. That, it having been shown by uncontradicted testimony, that the hogs got in through the fence of the plaintiff, and it having been proven as well by witnesses on behalf of the plaintiff as by those of the defendant that the plaintiff's fences were not sufficient to keep out orderly cattle, and it having been proved by the plaintiff's own sons as well as by other witnesses on his behalf that other cattle and other hogs than those of the defendant were in his grain field, the plaintiff cannot recover.

*Ans.* We answer this point also in the negative. [8]

4. If the jury believe that the plaintiff's fences were not neighbor like, the plaintiff cannot recover.

*Ans.* We answer that point in the negative, because it leaves out of view the evidence as to the agreement which the plaintiff alleges was made between the parties. [9]

By defendant's counsel: Your Honor, that was only in regard to the partition fence; does not affect the other fences.

By the Court: (Continuing.) If you find as a matter of fact that there was no agreement covering the fences in dispute, then this point would be well taken; if, however, there was such an agreement and it was in force at the time of the alleged trespasses by the defendant's cattle, then that agreement is conclusive between the parties, and regulates their rights.

Verdict and judgment for plaintiff.

The assignments of error specified: (1) The refusal to admit the records of the replevin suits in evidence; (2–5) the portions of the charge in brackets; (6) the refusal of defendant's first point; (7–9) as follows:

7. In answering defendant's second point in the negative, and misquoting it. (See charge.) That point is as follows:

2. "The undisputed testimony of both the plaintiff and the

defendant being that a settlement was had between them on September 22, 1884, and that no trespass or damage was done by the defendant's cattle after that time, the presumption of law is that all matters in dispute or at variance between the parties were merged in that settlement, and cannot be opened unless on the ground of fraud or mistake, and therefore acts as a bar to a recovery in this case for damages done by defendant's cattle."

8. In answering defendant's third point in the negative; and misquoting point (see charge), which point was as follows:

3. "That, it having been shown by uncontradicted testimony, that the hogs got in through the defective fences of the plaintiff, and it having been proven, as well by witnesses on behalf of the plaintiff, as by those of the defendant, that the plaintiff's fences were not sufficient to keep out orderly cattle, and it having been proven by the plaintiff's own sons, as also by witnesses of the defendant, that other cattle, hogs, turkeys, etc., etc., were in those same fields, the plaintiff is not entitled to recover in this action.

9. In the answer in the negative to the defendant's fourth point, and misquoting the same (see charge). Which point and answer are as follows:

4. "If the jury believe that the plaintiff's fences were not neighbor like, and by reason of which the defendant's hogs and cattle entered upon the plaintiff's lands and injured his crops, the plaintiff is not entitled to recover.

*Ans.* We answer that point in the negative, because it leaves out of view the evidence as to the agreement which the plaintiff alleges was made between the parties.

Defendant's counsel: Your Honor, that was only in regard to the partition fence; it does not affect the other fences.

By the Court: ('Continuing.) If you find as a matter of fact that there was no agreement covering the fences in dispute, then this point would be well taken; if, however, there was such an agreement and if it was in force at the time of the alleged trespasses by the defendant's cattle, then that agreement is conclusive between the parties, and regulates their rights."

*E. R. Ikeler, Grant Herring, R. R. Little,* and *W. H. Rhawn* for plaintiff in error.

*B. Frank Zarr* and *John G. Freeze* for defendant in error.

PER CURIAM:

A careful examination of this case reveals no error committed in the court below. The question concerning the agreement between the parties as to the division fences, was properly submitted to the jury. The suits of replevin had nothing whatever to do with the matter in hand. The act of 1705 is, in its nature, penal, and cannot be used as a remedy for a trespass unless its terms have been modified by some local enactment to which our attention has not been called.

The fourth, fifth, sixth, seventh, and eighth assignments are passed, as not being in accordance with the rule of this court.

The judgment is affirmed.