## Barber, Appellant *v.* Mensch.

[Marked to be reported.]

*Fences—Cattle—Trespass—Statutes—Repeal—Acts of* 1700, *March* 11, 1842, *April·*4, 1889.

Until the act of April 4, 1889, P. L. 27, was passed the first section of the act of 1700 was in force throughout the commonwealth. By the repeal of the act of 1700 the rights of owners of cattle and landowners were left as they were at common law, which required owners of cattle to fence them in, or be answerable in damages for their trespasses.

Since the act of April 4, 1889, the owner of cattle who is sued for damages for the trespass of his cattle, must show, to prevent recovery, that he kept his cattle in or tried to by a sufficient fence.

The act of April 4, 1889, repealing the act of 1700, 1 Sm. L. 13, is not inconsistent with the act of March 11, 1842, P. L. 62, and did not repeal it.

Argued May 10, 1893.  Appeal, No. 23, July T., 1893, by plaintiff, William B. Barber, from judgment of C. P. Union Co., Dec. T., 1891, No. 46, on verdict for defendant, Benneville Mensch.  Before STERRETT, C. J., GREEN, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from justice of the peace.  Trespass for injuries caused by defendant's cattle.  Before McCLURE, P. J.

The facts appear by the opinion of the Supreme Court.

The court charged in part as follows:

" The contention of the plaintiff is that the act of 1700, providing for the erection of fences about cornfields, and other inclosures, and naming the kind of fence, height of it, and manner of its construction, was repealed by the act of 1889; that with that act fell the act of 1842, providing for the cost of maintenance and erection of partition fences between adjoining landowners.  On the other hand, the defendant contends that, while the act of 1700 was repealed, the act of 1842 is still in force, and that it is still necessary for landowners to keep up the partition fences.  Without any act of assembly on the subject, at common law, a man is not obliged to fence against his neighbor's cattle, and a person is responsible for any damage that his cattle might do on the land of another.  The act of 1700 was intended to prevent that in this state, and from that time until 1889 it did so.  The act of 1842 we do not think was rendered null and void by the repealing act of 1889, as contended by defendant's counsel.  Between adjoining landowners, the act of 1842 is still in force, and it is now, as it was before the act of 1889, necessary for farmers to build partition fences, and to maintain them.  That is the principal point which is raised in this case.  [Therefore, as between Mr. Barber and Mr. Mensch, this fence being a common fence, they were both bound to see that it was in repair; that is, it was the duty of each of them to keep up every part of the fence, unless there was an agreement between them that one should keep up one part and the other the other, and I believe there was no evidence of any agreement of that kind in this case.]  [1]  There had been an agreement years before between Barber and Mensch as to the partition fence along the north line and east line of the tract of Mensch; but having sold part of the property to R. W. Barber,

this agreement fell between the points A and B on the map. At least, the defendant does not contend that they were not jointly liable to build the fence. Hence, if this fence between the points A and B, and through which the cattle passed, was defective, it was as much the fault of Barber as of Mensch, and being the fault of Barber he could not recover of Mensch on account of its bad condition. . . .

" [There is just one question of fact for you to pass upon. Was the fence between these parties sufficient to keep out ordinary cattle. If it was not your verdict should be for the defendant ; if it was your verdict should be for the plaintiff for whatever damages you think he sustained.] " [2]

Plaintiff's points were as follows :

" 1. That since the act of April 4, 1889, no line or partition fence is required to be made between the lands of adjoining owners, and no condition of any so called line fence will excuse the defendant in the present case, if the jury believe that the defendant's cattle were without permission on plaintiff's lands." Refused. [3]

" 2. That if such line or partition fence is required, the evidence shows that the plaintiff did all that he was legally required to do in relation thereto, and if the jury believe that the defendant's cattle were upon the plaintiff's land without his permission the plaintiff is entitled to recover." Refused. [4]

" 3. That since the passage of the act of April 4, 1889, no man is required to fence against his neighbor's cattle ; but every person is legally bound to restrain his own cattle. *Answer :* This point is refused as far as this case is concerned. That would apply to outside fences, but not partition fences." [5]

Defendant's points were among others as follows :

" 3. That a partition fence is a common burden to both parties and both parties must build the fence ; if they cannot agree, recourse must be had under the act of assembly of 1842, before any right of action can accrue from the condition of the fence." Affirmed. [6]

" 4. That under the act of assembly if the parties cannot agree the adjoiner seeking to have the fence must build it himself and have recourse to the act of assembly." Affirmed. [7]

" 5. That if recourse is not had to the act of assembly and a fence built under it, no right of action can accrue by reason of

there being no fence, neither can a right of action accrue by reason of breachy cattle if there is no such fence." Affirmed. [8]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–8) instructions, quoting them.

*Samuel H. Orwig, Alfred Hayes* with him, for appellant.—We are unable to discover any case decided in Pennsylvania which goes to the extent that a defendant is relieved of his liability for the trespass of his cattle by reason of anything contained in the act of 1842.

In Knappenberger v. Roth, 153 Pa. 614, wherein the facts are very similar to those in the present case, plaintiff was allowed to recover damages, although defendant Roth averred that the portion of the partition fence which Knappenberger ought to have kept up was in bad condition, and not sufficient protection against cattle of orderly habits. Odenwelder v. Frankenfield, 153 Pa. 526, did not involve the liability of an owner for the trespass of his cattle. In Rangler v. M'Creight, 27 Pa. 95, the act of March 11, 1842, is not mentioned. Painter v. Reece, 2 Pa. 126, decided that in case either party abandons a partition fence, the fence viewers have no jurisdiction. Rohrer v. Rohrer, 18 Pa. 367, decides that fence viewers had no jurisdiction, because the adjacent land was not improved land but land open to the public. In Palmer v. Silverthorn, 32 Pa. 65, proceedings under the act of 1842 were not resorted to.

In Gregg v. Gregg, 55 Pa. 227, it was said that the provisions of the act of 1700, that the owner of such cattle shall make good all damage to the owner of the inclosure, if it be fenced according to law, implies that without such fencing there is no such liability.

When the act of April 4, 1889, was passed repealing the first section of the act of 1700, it repealed the only law in Pennsylvania which required lands to be inclosed within a fence.

The common law now obtains in Pennsylvania, and the landowner is not required to fence cattle out, but their owner must fence them in so as to avoid trespassing on his neighbor's fields : Arthurs v. Chatfield, 9 Pa. C. C. R. 34; Thompson v. Kyler, 9 Pa. C. C. R. 205.

In the case of Milligan v. Wehinger, 68 Pa. 236, cited by

defendant below, an examination of the opinion of this court shows that the statutory duty to fence could only be based upon the act of 1700.

*J. Merrill Linn, P. B. Linn* and *Jos. C. Bucher* with him, for appellee.—Under the common law every man must keep up his cattle. The act of 1700, § 1, prescribed that the owner of lands must maintain a certain character of fence, and under it it was decided no cause of action accrued by reason of trespassing cattle unless that character of fence was maintained. That act is repealed, and no other, expressly or by implication.

The act of 1842 established a distinct judicial tribunal for the adjudication of a right created by the act, proceedings before whom are a step in the legal remedy, an expedient the parties must adopt in the absence of a contract, before an action is allowed: Shriver v. Stephens, 20 Pa. 141.

The keeping of the fence is a common duty: Milligan v. Wehinger, 68 Pa. 236.

Knappenberger v. Roth, 153 Pa. 614, and Odenwelder v. Frankenfield, 153 Pa. 526, distinctly recognize the act as not repealed.

Before a cause of action can accrue in favor of one adjoining landowner against the other, he must make a sufficient fence along the whole line, or have a portion of it assigned to the other, so that the duty would not rest exclusively on the latter to keep it in repair.

Until the fence is apportioned between the adjoining landholders, it is equally the duty of each to keep up every part of it. Hence, if it is defective, it is as much the fault of one as the other, and being equally defective, neither can recover of the other on account of its condition.

It is sufficient that the jury found that the fence was not sufficient: Rangler v. McCreight, 27 Pa. 95.

OPINION BY MR. JUSTICE DEAN, October 2, 1893:

Barber and Mensch are the occupants of adjoining farms in Limestone township, Union county. Where the farms adjoin east and west, there is a mill race wholly on Barber's land, running with and very near the line. In the spring of 1891, Barber built at this place one half the partition fence, and left

it in good condition ; he also made repairs to the other half. Some of Mensch's cattle pasturing on his side, frequently broke through the older part of the fence, and did considerable damage to Barber's crops. Barber showed some forbearance under the repeated injuries, but in the end brought suit before a justice of the peace for damages, and recovered a judgment for $25.00 and costs, from which Mensch appealed to the common pleas, where, on trial before a jury, under the instructions of the court, there was a verdict for defendant; from the judgment on that verdict comes this appeal.

The plaintiff's third written prayer for instruction in the court below embraces the whole subject of contention. It is :

" 3. Since the passage of the act of April 4, 1889, no man is required to fence against his neighbor's cattle, but every person is legally bound to restrain his own cattle."

The court refused the instruction, and said : " Between adjoining landowners the act of 1842 is still in force, and it is now, as it was before the act of 1889, necessary for farmers to build partition fences and to maintain them. . . . Hence if this fence, between the points A and B, and through which the cattle passed, was defective, it was as much the fault of Barber as of Mensch, and being the fault of Barber, he could not recover of Mensch on account of its bad condition."

While the law, as stated by the learned judge, is right, we think the conclusion is wrong.

The first section of the Fence Act of 1700 directs : " That all cornfields and grounds kept for inclosures within the said province and counties annexed, shall be well fenced with fence at least five feet high, of sufficient rail or logs, and close at the bottom. And whosoever, not having their ground inclosed with such sufficient fence as aforesaid, shall hurt, kill, or do damage to any horse, kine, sheep, hogs or goats of any other persons, by hunting or driving them out of or from said grounds, shall be liable to make good all damages sustained thereby to the owner of the said cattle."

The effect of this was to compel every landowner to defend his crops against his neighbor's cattle by constructing a sufficient fence ; he must fence them out. It changed the rule of the common law, which held the owner liable for all damage done to others by his cattle, and thereafter restricted his lia-

bility to only such damage as was done by them where a "sufficient" fence had been built by the owner of the land, as required by law.

Then came the act of 1842, the third section of which provided : "When any two persons shall improve land adjacent to each other, or where any person shall inclose any land adjoining to another's land already fenced in, so that any part of the first person's fence becomes the partition between them, in both these cases the charge of such division fence, so far as is inclosed on both sides, shall be equally borne and maintained by both parties." Then followed provisions for view by township auditors whose duty it was to determine the sufficiency of the fence, and what proportion of the expense of building a new or repairing an old one should be borne by each, and, in case of refusal of either to pay, how the money should be collected. This act provided a complete method for just one thing, and only one : enforcement of an equitable division of the cost of a sufficient partition fence erected on the line between adjoining owners. It did not compel the landowner to join with his neighbor in erecting a division fence ; he could set one altogether on his own side of the line : Dysart v. Leeds, 2 Pa. 488. When he had paid his proportion of the cost of one fence, he was not bound to keep it up, but might build a new one on his side : Rohrer v. Rohrer, 18 Pa. 367.

The provisions of the act of 1842 could have been enforced before the existence of the act of 1700 ; it needed no aid from other legislation to effect its purpose. . There has never been a time, since man earned his bread by cultivating the ground, that some sort of an artificial separation, defining the limit of right of adjoining owners, has not been recognized as needful ; and this not only by the people but by the lawmakers. Long before 1700, in England, separation constructions of some kind were a fruitful source of litigation. The partition fence was seldom wooden rails, as in Pennsylvania, but, if not, it was hedge, ditch, wall, or some other artificial separation.

But the act of 1842 was passed when the requirements of the act of 1700, as to the sufficiency of a fence, were in force, one that would bar cattle out ; hence, the test of the "sufficiency" of such fence was always found by the viewers in that act, or in the 6th section of the act of 1729, while it was in force ; one

of the character specified in these acts, they determined, was a " sufficient" partition fence.   Although there were very many fence acts passed after the act of 1700, there were just about as many repealing statutes, up to the decision of this court in Gregg v. Gregg, 55 Pa. 227, in 1868, where it is declared, STRONG, J., delivering the opinion, after a full consideration of the whole subject, that the result of all the legislation, the last act being that of April 11, 1862, was to leave the first section of the act of 1700 in force in all the counties of the commonwealth.   To the same effect is the opinion of President Judge MAYER, of the 25th judicial district, on a case arising in Elk county, part of the original territory of Northumberland, as was Union county, from which comes the present case.   The conclusions of the learned judge were based on a most careful examination of every statute on the subject from 1700 down to 1890.   This case is Thompson v. Kyler, 9 Pa. C. C. R. 205. An investigation just as thorough, was made by President Judge WHITE, of the 40th district, in Arthurs v. Chatfield, reported in same book, page 34, in which he arrives at the same conclusions.   So without again going into a laborious examination of the acts of assembly for the last 200 years, as urged by counsel for appellee, we treat the question as settled, that the first section of the act of 1700 was in force in Union county, as well as in the other counties of the state, at the date of its repeal in 1889.

The question then is, what was the effect on the act of 1842 of the act of 1889, which repealed the first section of the act of 1700 ?

By the repeal, the rights of landowners and owners of cattle are left as they were at common law before 1700.   That is, the owner of cattle must now fence them in, or he is answerable in damages for their trespasses.   But that affects not the correctness of the assumption in the act of 1842, that between adjoining landowners, a partition fence is needful, and will be built. Nevertheless, by the repeal, the changed purpose of the fence has transferred the liability, in such cases as the one before us, from the one damaged to the owner of the cattle doing the damage.   Before the repeal, the complaining plaintiff, to recover, must show that he had maintained a " sufficient " fence, for it was his duty to fence out; since the repeal, the responding de-

fendant, the owner of the cattle, must show, to prevent a recovery, that he, by a "sufficient" fence kept them in or tried to. It is the defendant now who is confronted with the act of 1842. The question to be put to him, is : Under that act, did you construct a division fence sufficient to keep your cattle off your neighbor? If you did not, you must answer in damages ; and this without regard to the liability for the cost of a division fence. It was his duty to have a sufficient fence, whether his neighbor built one or half of one. If he wanted his neighbor to share with him the cost, the method of enforcing contribution is yet plainly pointed out to him in the act of 1842. Viewers can still determine whether the fence is "sufficient" from the character and purpose of the structure, and can still assess and certify what proportion of the cost should be paid by the delinquent neighbor. As it is clearly right that this act should remain in force, because the assumption that partition fences are needful and will be built, in the act of 1842, was based on known facts which will continue to exist indefinitely in the future, it may be presumed the legislature of 1889 had this in mind when they passed the repealing act. Seeing no such connection or interdependence between the two acts, as called for saving words for the second, and realizing that the act of 1842 would not fall by the repeal of that of 1700, they refrained from saying anything on the subject of partition fences in the repeal.

If, as is certain, they will be built, there is every reason why each owner should continue to equitably share the cost, for each shares the benefit.

So, while the learned judge properly held the act of 1842 was not repealed by the act of 1889, because there is no inconsistency between the two, we think he erred in holding that the liability for damage remained the same. In substance, he instructed the jury that if Barber had not, by a sufficient partition fence, barred out Mensch's cattle, he could not recover. He should have instructed them, if Mensch had not, by a sufficient partition fence, kept them in, his defence failed, and Barber had a right to recover such damage as he sustained.

This in effect disposes of the whole contention between the parties. The judgment is reversed and a new trial awarded.