## Donald W. FOGLE and Charlotte A. Fogle

### v.

## MALVERN COURTS, INC. and Roger Buettner and Joan Buettner, Appellants.

Superior Court of Pennsylvania.

Argued Sept. 10, 1997.

Filed Oct. 3, 1997.

Marjorie A. Thomas, Philadelphia, for appellants.

Dante W. Renzulli, Jr., Exton, for appellees.

Before BECK, KELLY and JOHNSON, JJ.

JOHNSON, Judge.

In this appeal, we are asked to decide whether the Fence Law, 29 P.S. § 41, requires an adjoining landowner who does not keep livestock to share the cost of a fence for the benefit of a neighbor. Because we conclude that it does not apply to such a situation, we reverse.

Donald W. Fogle and Charlotte A. Fogle ("the Fogles") own property located in the town of Frazer, Pennsylvania, which is bordered on three sides by property of Malvern Courts, Inc., Roger Buettner and Joan Buettner (collectively, "the Buettners"). The neighborhood in which the properties are located consists of single family residential homes with some nearby commercial uses. During the time of the parties' ownership of the properties, no fence has ever existed on or near the boundary lines between the parties' properties.

In 1995, the Fogles filed a "Petition to Appoint Surveyor Pursuant to 29 P.S. § 41" and requested that the court enter an order requiring the Buettners to pay an equal share of the cost of erecting a division fence between the properties. In their reply, the Buettners denied any liability and claimed that the Fence Law does not apply to the neighborhood in which the parties' properties exist or to circumstances where a division fence has not already been constructed.

The case was submitted to the trial court on cross-motions for summary judgment. The court subsequently entered an order granting the Fogles' motion for summary judgment and denying the Buettners' motion

of the two-part test (namely, whether the clause    unreasonably favors one party over the other).

for summary judgment. This appeal followed.

Essentially, the Buettners raise two issues for our review on appeal. First, the Buettners argue that the Fence Law should not be construed to require landowners to erect a division fence on their property and contribute to its cost where there is no pre-existing division fence or livestock on their property. Second, the Buettners argue, in the alternative, that the Fence Law, as applied to them, violates the Fifth and Fourteenth Amendments of the United States Constitution. Since we resolve this matter on the basis of the Buettners' first argument, we need not address their second issue.

This Court's scope of review from the grant of a motion for summary judgment is plenary. *Phico Ins. Co. v. Presbyterian Med. Serv.*, 444 Pa.Super. 221, 663 A.2d 753 (1995).

"In reviewing an order granting a motion for summary judgment, we must view the record in the light most favorable to the non-moving party. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Moreover, in summary judgment proceedings, it is not the court's function to determine the facts, but only to determine if an issue of material fact exists. Summary judgment should only be granted in those cases which are free and clear from doubt.

Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits on file support the trial court's conclusion that no genuine issue of material fact exists and [that] the moving party is entitled to judgment as a matter of law."

*Id.* at 224, 663 A.2d at 755 (quoting *Acme Markets v. Federal Armored Express,* 437 Pa.Super. 41, 45, 648 A.2d 1218, 1220 (1994)). In addition, the grant of a motion for summary judgment will not be disturbed on appeal absent an error of law. *Id.* In this instance, the parties do not dispute the relevant facts. Therefore, our only task is to determine the proper construction of the Fence Law, 29 P.S. § 41.

In reading the language of a statute, we keep in mind the basic tenet of statutory construction that requires a court to construe the words of a statute according to their plain meaning. 1 Pa.C.S. § 1903(a). Additionally, the object of statutory interpretation and construction is to ascertain the intention of the legislature and to give effect to all the statute's provisions. 1 Pa.C.S. § 1921(a). We may consider the consequences of a particular interpretation, 1 Pa.C.S. § 1921(c); however, we may presume that the legislature did not intend a result that is absurd or unreasonable. 1 Pa.C.S. § 1922.

With these principles in mind, we review the Fence Law, which contains the following language:

[O]wners of improved and occupied land shall erect and maintain an equal part of all line or division fences between them, nor shall any such owner be relieved from liability under the provisions of this act except by the consent of the adjoining owner. And ·if any owner of such improved and occupied land shall fail or neglect to erect or maintain his, her, or their share of such line or division fence the party aggrieved shall notify the county surveyor ... whose duty it shall be to examine such line or division fence, so complained of; and if he finds said fence sufficient, the complainant shall pay the cost of his service; but if he finds such fence insufficient, he shall so report to a justice of the peace or alderman, residing in the county where such fence is located, designating points and distances of such fence, whether a new fence is required or whether the old one can be repaired, and the probable costs of a· new, or the repair of the old, fence; ... Provided, That no owner of improved land shall be compelled to build or repair fence during the months of December, January, February, and March....

29 P.S. § 41.

The first sentence of the Fence Law requires the owners of improved and occupied land to "erect" a line or division fence. The Fogles would have us end our analysis here and apply the Fence Law to a non-agricultur-

al neighborhood that consists of single family residential houses with some nearby commercial uses. The Fogles' reasoning, however, is flawed. The statute, when viewed in its entirety, does not intend such a result. Further, the result advocated by the Fogles is an unreasonable interpretation of the Fence Law.

We now examine the remaining language of the statute. When a landowner fails to erect or maintain his portion of the division fence, the aggrieved party must notify the county surveyor. The county surveyor is then required to examine the division fence and determine whether it is "sufficient" or "insufficient." If the fence is found "sufficient," the aggrieved party must pay for the costs of a surveyor. If, however, the fence is found "insufficient," the surveyor must determine whether a new fence is required or whether the old one can be repaired. The delinquent landowner is then notified and required to act in accordance with the surveyor's findings.

Thus, the remainder of the statute focuses on whether the division fence is "sufficient" or "insufficient." This leads us to conclude that the division fence must be constructed and maintained for a particular purpose for this statute to apply. Since the statute is unclear on what that particular purpose might be, we look to the history behind the statute's enactment and to court cases of this Commonwealth. *See* 1 Pa.C.S. § 1921(c) (when the words of a statute are not explicit, the court must ascertain legislative intent by considering other indicia of that intent).

During the eighteenth and nineteenth centuries, almost every landowner kept some form of livestock on his property and the common law did not require such landowners to fence their land in the absence of an agreement between the adjoining owners. *See* 5 R. Powell, *The Law of Real Property*, § 693 (1989). However, the common law did encourage landowners to fence their properties by applying the rule of strict liability for any damages caused by their animals if they trespassed onto another's land. *See* W. Keeton, Prosser and Keeton, *The Law of Torts*, § 76 (5th ed.1984). Eventually, many states,

including Pennsylvania, enacted laws combining a duty to fence with the concept of strict liability to create a firm set of rules which would prevent disputes concerning the liability for damages to crops or other property caused by livestock. Specifically, the only discernible purpose of Pennsylvania's Fence Law has been to resolve disputes involving trespassing livestock. This purpose is indicated in the preamble of the first such law:

> For preventing all disputes and differences that may arise through the neglect or insufficiency of fences in this province and counties annexed, *Be it enacted,* that all cornfields and grounds kept for enclosures ... shall be well fenced....

1700 Pa. Laws 13, § 1.

Pennsylvania case law involving predecessor statutes to the current Fence Law also provides support for this interpretation. For example, in *Barber v. Mensch,* 157 Pa. 390, 27 A. 708 (1893), the defendant and plaintiff were occupants of adjoining farms. A fence was constructed along the party line between the properties. Defendant's cattle frequently broke through the older part of the fence and damaged plaintiff's crops. Plaintiff brought suit against the defendant for the damages to his crops. *Id.* at 394, 27 A. at 708.

Accordingly, the court applied the Act of 1842, a predecessor statute, the third and fourth sections of which contained similar language to the current Fence Law:

> SECTION 3. When any two persons shall improve lands adjacent to each other, or where any person shall enclose any land adjoining to anothers land already fenced in, so that any part of the first persons fence becomes the partition fence between them, in both these cases the charge of such division fences, so far as is enclosed on both sides, shall be equally borne and maintained by both parties.
>
> SECTION 4. On notice given the said viewers, shall ... examine any line fence ... and shall make out a certificate in writing, setting forth whether in their opinion, the fence ... is sufficient, and if not, what proportion of the expense of

building a new or repairing the old fence, should be borne by each party....

1842 Pa. Laws 36.

In applying the act, the court held that, to be "sufficient," the division fence must be constructed to prevent livestock from entering the adjoining landowner's property. The court further stated that the repeal of the Act of 1700 reinstated the common law obligation on the part of farmers to restrain their own livestock. *Id.* at 398, 27 A. at 710. Accordingly, the defendant was required to show that a "sufficient" fence was constructed to keep his cattle off plaintiff's property. *Id.; see also Erdman v. Gottshall,* 9 Pa.Super. 295, 300 (1899)("sufficiency" of a division fence for keeping livestock on owner's property was a question for the jury). Consistent with *Barber,* we note that the majority of cases addressing previous versions of the Fence Law dealt with liability for trespassing livestock. *See, e.g., Robison v. Fetterman,* 9 Sadler 604, 14 A. 245 (1888); *Milligan v. Wehinger,* 68 Pa. 235 (1871); *Rangler v. McCreight,* 27 Pa. 95 (1856); *Hall v. Kreider,* 55 Pa.Super. 483 (1913); *Scheidy v. Huey,* 18 Pa.D. 967 (1908); *Libby v. Old,* 4 North. 17 (1893).

Finding no other discernible purpose but to protect property from trespassing livestock, we conclude that the 29 P.S. § 41 does not require an adjoining landowner who does not keep livestock to share the cost of a fence for the benefit of a neighbor.

We also note that our interpretation avoids the unreasonable result of requiring every owner of improved and occupied land in Pennsylvania to pay a portion of the cost of a division fence which he or she neither wants nor needs. *See* 1 Pa.C.S. § 1922(1)("the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"). The unreasonableness of such a result has also been recognized by courts of other states. *See Choquette v. Perrault,* 153 Vt. 45, 569 A.2d 455 (1989); *Sweeney v. Murphy,* 31 N.Y.2d 1042, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973). Most recently, the Vermont Supreme Court held that their state fence law could not be applied to landowners without livestock. *Choquette, supra,* at 460. After finding that the primary purpose of the law was to benefit landowners with livestock, the court concluded that the statute was burdensome and arbitrary as applied to landowners without livestock. *Id.* Likewise, we also find such a result arbitrary and unreasonable.

Since the Buettners have no livestock to be enclosed, we conclude that the statute does not apply. Accordingly, the Buettners are not required to pay a portion of the costs should the Fogles erect a fence between their adjoining properties. We must, therefore, reverse the trial court order granting the Fogles' motion for summary judgment and remand to the trial court with direction to enter summary judgment in favor of the Buettners.

Order granting Summary Judgment in favor of the Fogles' **REVERSED**; case **REMANDED** with the direction to enter summary judgment in favor of the Buettners.