[J-124-2016] [MO: Saylor, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 74 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the York |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-67-CR- |
| v. | : | 0002400-2014 dated 2-10-2015 |
| | : | |
| | : | ARGUED: December 7, 2016 |
| JOEY WAYNE HERMAN, | : | |
| | : | |
| Appellee | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE DONOHUE** **DECIDED: May 25, 2017**

I concur with the learned Majority's reasoning and disposition of the first two issues presented, namely its affirmance of the trial court's dismissal of the counts for possession and distribution of controlled substance analogues, both prior to and after the Act 40 amendments to the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780-101-144 (the "Act"). With respect to the pre-Act 40 amendment counts, I particularly agree with the Majority's rationale that the expert testimony did not demonstrate any agreement in the scientific community that there is a scientifically accepted methodology for determining whether PB-22 is an analogue of JWH-018, or indeed if the two compounds are in fact analogues. As the Majority properly concludes, if scientists are unable to agree on these fundamental points, then the term "analogue" in the Act is unconstitutionally vague because it is unreasonable to expect the average citizen to be on notice of such status. Majority Op. at 16-17.

Applying precisely the same reasoning, however, I must conclude that the definition of "designer drug" in the Act, specifically, a substance, inter alia, with "a chemical structure **substantially similar** to that of a controlled substance in Schedule I, II or III in the Act," 35 P.S. § 780-102 (emphasis added), as applied to PB-22,[1] is also unconstitutionally vague. As with "analogues," the expert witnesses could not agree that any scientifically accepted methodology existed for determining whether the molecular components of PB-22 are "substantially similar" to JWH-018. The trial court found that the experts "have been unable to reach an agreement on a method for analyzing and determining the similarities between the chemical structures … of PB-22 and JWH-018." Trial Court Opinion, 5/28/2015, at 9. Moreover, the three experts called by the parties to testify could not agree on whether the chemical structure of PB-22 is in fact "substantially similar" to that of JWH-018. Dr. Michael Coyer, Ph.D, a forensic toxicologist, testifying as an expert for the Commonwealth, opined, using his methodology of, inter alia, visually comparing two-dimensional diagrams of the molecules, that the components of PB-22 and JWH-018 are "very similar." N.T., 11/7/2014, at 25, 36. John Hoffman, Ph.D, testifying for Herman, opined that PB-22 and JWH-018 are not even in the same structural class, do not have "similar structures," and that three-dimensional modeling, rather than two-dimensional modeling, is the appropriate standard for comparing molecular structures. *Id.* at 81-82, 91. Heather Harris, Ph.D, a forensic analytical chemist, also testifying on behalf of Herman, agreed with Hoffman that the chemical structures PB-22 and JWH-018 are "not structurally

---

[1] In June 2016, the Act was amended to make PB-22 a scheduled controlled substance. 35 P.S. § 780-104(1)(vii)(2.2). For present purposes, we apply the Act as it existed on July 15, 2013.

similar as a whole," and that three-dimensional modeling, rather than the two-dimensional modeling used by Coyer, is a better indicator of similarity. *Id.* at 99, 100.

As shown, the experts could not agree on whether the chemical structure of PB-22 is "substantially similar" to that of JWH-018. More fundamentally, they could not even agree on a methodology accepted in the relevant scientific community for analyzing chemical compounds to determine whether they are substantially similar to each other. Accordingly, based on the same reasoning relied upon by the Majority with respect to whether these compounds are analogues -- that if scientists cannot agree on what constitutes substantial similarity, then the average citizen cannot be on notice that PB-22 is an illegal drug -- we must likewise find that the definition of "designer drug" is constitutionally vague.

The Majority contends that "analogue" and "designer drug" present different issues for a jury because while the term "analogue" is not expressly defined in the Act (and is thus "somewhat nebulous"), the concept of "substantial similarity" is well-known to persons of ordinary intelligence. Majority Op. at 23. I must disagree. The lack of a statutory definition is not an impediment to providing a jury with a clear understanding of an undefined statutory term. The rules of statutory construction provide that an undefined statutory term must be construed according to its common and approved usage. 1 Pa.C.S. § 1903(a). This Court has repeatedly indicated that dictionaries should be used as source material to identify this "common and approved usage." *See, e.g.*, *Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 823 A.2d 108, 127 n.31 (Pa. 2003); *Fogle v. Malvern Courts, Inc.*, 722 A.2d 680, 682 (Pa. 1999); *Love v. City of Philadelphia*, 543 A.2d 531, 532 (Pa. 1988). Dictionaries define "analogue" as

"[o]ne of a group of chemical compounds similar in structure but different in composition,"Random House Webster's College Dictionart 47 (2d ed. 2001), or as "[a] compound with a molecular structure closely similar to that of another." Oxford English Dictionary 431 (2d. 1989).

With respect to whether chemical compounds are "analogues" or have "substantially similar" chemical structures, both require the jury to consider the same fundamental concept -- that of the degree of the similarity of chemical structures in question. Because experts cannot even agree on a scientifically acceptable methodology for analyzing this concept, much less demonstrate any likelihood of agreement among themselves on the outcome of such an analysis, the average citizen cannot be expected to be on adequate notice of whether the possession or sale of the compounds at issue here violated the provisions of the Act.

Therefore, I dissent from the Majority's disposition of the trial court's determination with respect to the count for possession, or possession with intent to distribute, a designer drug. 35 P.S. § 780-113(a)(30), (36). I would affirm the trial court's order in its entirety.

Justices Todd and Wecht join this concurring and dissenting opinion.