J. S31034/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HAROLD K. CRONER, JAMES E. CRONER AND JONATHAN H. CRONER | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : | |
| SAMUEL G. POPOVICH AND CATHY J. POPOVICH, HUSBAND AND WIFE, JOSEPH POPOVICH, SINGLE, AND FRANK POPOVICH, JR., SINGLE, | : : : : : | |
| APPEAL OF:  SAMUEL G. POPOVICH AND CATHY J. POPOVICH, HUSBAND AND WIFE | : : : | No. 1595 WDA 2016 |

Appeal from the Order Entered September 16, 2016,
in the Court of Common Pleas of Somerset County
Civil Division at No. 221 Civil 1991

BEFORE:  PANELLA, J., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 01, 2017**

Samuel G. Popovich and Cathy J. Popovich[1] ("the Popoviches") appeal the order of the Court of Common Pleas of Somerset County that granted in part and denied in part the motion of Harold K. Croner,[2] James E. Croner, and Jonathan H. Croner ("the Croners") which sought to require the Popoviches to construct a fence line in accordance with a viewer's certificate. The trial court ordered the appointment of a fence viewer to view and

---

[1] The other two named Popovich parties are no longer part of the case.

[2] Harold Croner is deceased.

examine the division fence between the parties' land for purposes of determining the status of the fence and costs, if any, of repairing or replacing the fence. The trial court ordered the fence viewer to issue a report of his findings. In accordance with these findings, the Croners were then authorized to repair the fence where necessary in order to make the fence sufficient to contain livestock, and the Popoviches were ordered to pay one-half of the cost of repair less a credit of $579.86 for earlier repairs. If the viewer's report indicated that a new fence had to be constructed, the Croners were authorized to construct a new fence on the "certificate line" established by the viewer with the Popoviches responsible for one-half the cost less the $579.86 credit. The trial court denied the portion of the motion in which the Croners sought to have the Popoviches remove the current fence and reconstruct one on the "certificate line" at the Popoviches' expense.

Before this court, the only issue presented on appeal is whether the Popoviches have a duty to pay any portion of the erection and maintenance of a line fence when they do not keep livestock on their property. The Popoviches essentially argue that under 29 P.S. § 41 and the case law interpreting it, they do not have to pay for the cost of erecting and maintaining the fence because the Croners have livestock and they do not.

The record reflects the history of this case. The Croners and the Popoviches owned adjoining farms in Brothersvalley Township, Somerset

County. The Croners' farm has been used as pastureland for cattle since approximately 1948. A fence that had been in place between the two properties for many years fell into disrepair in 1991. On May 15, 1991, the Croners petitioned for appointment of a fence viewer. The Croners wished to repair the fence and sought an order that the Popoviches pay one-half of the cost. On May 23, 1991, Roland Fogle, a registered professional engineer, conducted a field viewing of the line fence between the parties' land and determined that the fence or at least a portion of it was insufficient and needed to be repaired or replaced. On or about April 20, 1992, the Popoviches removed all or a substantial portion of the old fence and began to construct a new fence as close to the fence line as possible at their own expense because cattle kept entering their property from the Croners' property. In 2014, someone cut the fence in five or six places, so that the fence would no longer contain cattle. (Trial court opinion, 9/20/16 at 1-4.) Hence, the Croners filed this instant motion.

> When reviewing the results of a non-jury trial, we give great deference to the factual findings of the trial court. We must determine whether the trial court's verdict is supported by competent evidence in the record and is free from legal error. For discretionary questions, we review for an abuse of discretion. For pure questions of law, our review is *de novo*.

***Recreation Land Corp. v. Hartzfeld***, 947 A.2d 771, 774 (Pa.Super. 2008), citing ***In re Scheidmantel***, 868 A.2d 464, 478-479 (Pa.Super. 2005).

This case involves the interpretation of Section 1 of the Fence Law, 29 P.S. § 41, which provides:

### § 41.  Division fences; proceedings to compel erection or part payment

From and after the passage of this act, owners of improved and occupied land shall erect and maintain an equal part of all line or division fences between them, nor shall any such owner be relieved from liability under the provisions of this act except by the consent of the adjoining owner.  And if any owner of such improved and occupied land shall fail or neglect to erect or maintain his, her, or their share of such line or division fence the party aggrieved shall notify the county surveyor or, if there is no county surveyor in the county, then a county surveyor of any adjoining county, or, if the county surveyor in any adjoining county refuses to act, a surveyor appointed by a judge of the court of common pleas, who shall act as a fence viewer and whose duty it shall be to examine such line or division fence, so complained of; and if he finds said fence sufficient, the complainant shall pay the cost of his service; but if he finds such fence insufficient, he shall so report to a justice of the peace or alderman, residing in the county where such fence is located, designating points and distances of such fence, whether a new fence is required or whether the old one can be repaired, and the probable costs of a new, or the repair of the old, fence; and said justice or alderman shall notify the delinquent owner of such improved and occupied land of the surveyor's report, and that his part of said fence, as found by the surveyor, be erected or repaired within forty days from the date of such notice; and if such notice be not complied with, the aggrieved party may cause said line or division fence to be erected or repaired, and the costs thereof collected, including the charge of the surveyor, from the delinquent owner of such improved and occupied land, as other debts are collected by law.  The surveyor shall be entitled to such payment for acting as a fence viewer as he may

> fix, not, however, exceeding twenty-five dollars. Where the surveyor reports that he finds the fence complained of sufficient, the amount payable to the surveyor shall be paid by the complainant, but where he reports the fence insufficient, the amount payable to him shall be paid by the delinquent owner of such improved or occupied land:  Provided, That no owner of improved land shall be compelled to build or repair fence during the months of December, January, February, and March:  And provided further, That nothing herein contained shall be construed to apply to railroad companies.

29 P.S. § 41.

Both parties and the trial court rely on *Fogle v. Malvern Courts, Inc.*, 701 A.2d 265 (Pa.Super. 1997), *affirmed*, 722 A.2d 680 (Pa. 1999). In *Fogle*, Donald W. Fogle and Charlotte A. Fogle ("the Fogles")[3] owned property in Frazer, Pennsylvania.  The property was bordered on three sides by property of Malvern Courts, Inc., Roger Buettner, and Joan Buettner ("the Buettners").  The properties were located in a single family home residential neighborhood with some commercial uses nearby.  No fence existed on the boundary lines between the Fogles' and the Buettners' properties.  In 1995, the Fogles petitioned to appoint a surveyor pursuant to 29 P.S. § 41 and requested that the Court of Common Pleas of Chester County order the Buettners to pay an equal share of the cost of erecting a division fence between their properties.  The Buettners denied that they were liable to pay any of the cost of constructing a fence and asserted that

---

[3] As far as this court can discern, it is a mere coincidence that the Fogles have the same last name as the fence viewer in the present case.

the Fence Law did not apply to residential neighborhoods or where a fence had not already been constructed. *Fogle*, 701 A.2d at 265.

Each side moved for summary judgment. The Court of Common Pleas of Chester County granted the Fogles' motion and denied the Buettners'. The Buettners appealed to this court. The one issue on which this court based its decision was whether the Fence Law should be construed to require landowners to erect a division fence on their property and contribute to its cost where there is no pre-existing fence or livestock on their property. *Id.* at 266.

This court reviewed the Fence Law, its predecessor statutes, and applicable case law. This court reversed and remanded to the Court of Common Pleas of Chester County with the direction to enter summary judgment in favor of the Buettners. *Id.* at 268. This court reasoned:

> Finding no other discernible purpose but to protect property from trespassing livestock, we conclude that the 29 P.S. § 41 does not require an adjoining landowner who does not keep livestock to share the cost of a fence for the benefit of a neighbor.
>
> We also note that our interpretation avoids the unreasonable result of requiring every owner of improved and occupied land in Pennsylvania to pay a portion of the cost of a division fence which he or she neither wants nor needs. *See* 1 Pa.C.S. § 1922(1) ("the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable"). The unreasonableness of such a result has also been recognized by courts of other states. *See Choquette v. Perrault*, 153 Vt. 45, 569 A.2d 455 (1989); *Sweeney v. Murphy*, 31

> N.Y.2d 1042, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973). Most recently, the Vermont Supreme Court held that their state fence law could not be applied to landowners without livestock. ***Choquette***, ***supra***, at 460. After finding that the primary purpose of the law was to benefit landowners with livestock, the court concluded that the statute was burdensome and arbitrary as applied to landowners without livestock. ***Id.*** Likewise, we also find such a result arbitrary and unreasonable.

> Since the Buettners have no livestock to be enclosed, we conclude that the statute does not apply. Accordingly, the Buettners are not required to pay a portion of the costs should the Fogles erect a fence between their adjoining properties. We must, therefore, reverse the trial court order granting the Fogles' motion for summary judgment and remand to the trial court with direction to enter summary judgment in favor of the Buettners.

***Fogle***, 701 A.2d at 268.

The Fogles appealed to the Pennsylvania Supreme Court. As this court did, our supreme court reviewed the Fence Law, its predecessor statutes, and the case law interpreting the older statutes. Our supreme court affirmed and concluded that the Fence Law did not apply because neither of the properties contained livestock and were not farms or ranches:

> Hence, even in their earliest forms, fence laws had as their objective the containment of livestock and the protection of crops.

> This conclusion is reinforced by the statutes' references to the "sufficiency" of fences. As did the laws described in ***Barber v. Mensch*** [27 A. 708 (Pa. 1893), the present statute provides that the fence between adjoining landowners, the cost of which is to be collected in part from the neighboring owner, must be a "sufficient" one. For the fence to be

> sufficient, it must be adequate for its intended purpose. There being no other discernible purpose than the containment of livestock, the term "sufficient" must have been used by the legislature to describe a fence in the context of ranch or farm property, i.e., a fence that was sufficient to prevent livestock from straying onto neighboring properties.
>
> In short, the Fence Law addresses the sharing of costs for fences constructed on farms and ranches. It does not apply to single-family residential neighborhoods in typical urban or suburban settings, where the containment of livestock is not a concern. Superior Court properly held, therefore, that the Fence Law is inapplicable to properties of the type presented here.

*Fogle*, 722 A.2d at 684 (footnotes omitted).

In the present case, the trial court relied on our supreme court's decision in *Fogle* that the Fence Law addresses the sharing of costs for fences constructed on farms and ranches and does not apply to single family residential neighborhoods where the containment of livestock was not a concern. The trial court reasoned that both the Croners' farm and the Popoviches' farm were located in rural Somerset County and had been used to graze cattle. Further, when the action commenced in 1991, there clearly was an issue with a division fence in need of repair as well as straying cattle. The trial court concluded that the Fence Law applied and imposed the order which is at issue here.

The Popoviches argue that because they no longer keep livestock on their property and the Croners do, the Popoviches are not the party intended by the General Assembly to come under the Fence Law. The Popoviches

further argue that this court held in *Fogle* that the Fence Law does not require an adjoining landowner who does not have livestock to share the cost of a fence for the benefit of an adjoining landowner who does have cattle or other livestock. The Popoviches also argue that forcing them to pay for one-half the cost of the fence would constitute an absurd result that the General Assembly did not intend, *see* 1 Pa.C.S.A. § 1922, because they do not own livestock.

Jonathan Croner[4] ("Croner") argues that the trial court correctly applied the Fence Law when it ordered the Popoviches to pay for one-half of the cost of repairing or replacing the fence even though the Popoviches do not currently raise livestock. Croner points to our supreme court's decision in *Fogle* for support in that our supreme court decided that the Fence Law did not apply in *Fogle* because the properties in question were not farms and/or ranches but were single family residences in an urban or suburban setting where the containment of livestock is not a concern.

This court finds Croner's argument persuasive. He asserts and the record supports him that the fence has existed in one form or another for as long as the parties can recall, both properties having been rural farms for many years. Unlike *Fogle*, the containment of livestock here is a genuine concern as the Croners had to stop renting out their pastureland to another

---

[4] Jonathan H. Croner and James E. Croner filed separate briefs though each sought the same outcome.

farmer to graze cattle because the cattle would travel over to the Popoviches' property. While the Popoviches do not currently have livestock on their property, there is no requirement in the Fence Law that both parties own livestock in order for a fence to be required under the law. Further, whether or not they own livestock, the Popoviches would benefit from the installation of a fence that would keep any cattle grazing on the Croners' land from coming over onto their land. In addition, the Popoviches ignore our supreme court's holding in **Fogle** that the Fence Law applies to farms and ranches.

Croner also argues that affirming the trial court would not lead to an absurd result because there is no "benefits" test in the Fence Law to determine who pays the cost, and at any rate, the Popoviches do benefit from the fence in that, if they resume raising livestock, the fence would keep their livestock on their property. Also, the fence would keep others from trespassing and would keep cattle from the Croners' property from coming onto the Popoviches' property. This court agrees with the arguments of Croner and determines that the trial court did not err.

Order affirmed.

J. S31034/17

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2017