J-S27013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HAROLD K. CRONER, JAMES E. CRONER, AND JONATHAN H. CRONER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAMUEL G. POPOVICH AND CATHY J. POPOVICH, HUSBAND AND WIFE, JOSEPH POPOVICH, SINGLE, AND FRANK POPOVICH, JR. SINGLE | : | No. 1232 WDA 2018 |

Appellants

Appeal from the Order Entered August 21, 2018
In the Court of Common Pleas of Somerset County Civil Division at
No(s):  No. 221 Civil 1991

BEFORE:   OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 7, 2019**

Appellants, Samuel G. Popovich and Cathy J. Popovich, husband and wife, Joseph Popovich and Frank Popovich, Jr., appeal from the order entered on August 21, 2018.  We affirm.

As the trial court explained:

> On May 15, 1991, Plaintiffs, Harold K. Croner[, James E. Croner, and Jonathan H. Croner (hereinafter, collectively, "the Croners"), filed a Petition for Appointment of Fence Viewer [(hereinafter "the Petition"),] pursuant to the provisions of 29 P.S. § 41.[1]  The Petition concerned the

_____

[1] We quote 29 P.S. § 41 at pages 11-12 of this memorandum.  At this point, we merely note that Section 41 "addresses the sharing of costs for [line or division] fences constructed on farms and ranches" and the procedure by

_____

*   Retired Senior Judge assigned to the Superior Court.

repair and reconstruction of a division fence that marks the boundary between the adjacent [lands of the Croners and Appellants]. . . . At the time of the Petition, the fence was alleged to be over [21] years old and [] had fallen into disrepair. [The Croners] wished to repair or replace the fence and receive reimbursement from [Appellants] for one-half of the attendant costs pursuant to 29 P.S. § 41. . . .

The [trial court] entered an order on May 15, 1991[,] appointing Roland Fogle as the Fence Viewer in accordance with [Section 41]. Fogle conducted a field viewing of the line fence on May 23, 1991 and began reconstructing the boundary line. Fogle then prepared a Report and Probable Cost Estimate regarding the repair or reconstruction of the fence. On or about April 20, 1992, [Appellants] began reconstruction of a replacement fence as close as possible to the sketch prepared by Fogle in his report. [The Croners were] dissatisfied with the placement and sufficiency of the replacement fence[] and filed a Notice of Objection to the placement of Fence Line with the [trial] court on March 14, 1995. Nearly three years later, [the Croners] filed a Motion Directing [Appellants] to Reconstruct Fence Line in Accordance with Viewer's Certificate. Thereafter, the case was inactive and continued until a hearing was held on [the Croners' Motion Directing Appellants to Reconstruct Fence Line in Accordance with Viewer's Certificate].

[The trial court] issued a memorandum and order on September [20,] 2016[,] granting in part [the Croners'] motion and also denying it in part. [The trial court] held that [Appellants] had, in fact, not constructed the replacement fence along the originally marked certificate line at certain sections, but that (a) the replacement fence was sufficient for the purpose of containing livestock, (b) the deviations from the certificate line were either necessary (due to the presence of a [15-]foot spoil bank on the certificate line, over which the fence physically could not be built) or were *de minimis* (in the case of three- to four-foot deviations from the

_____

which one landowner may compel an adjoining landowner to share in the costs of repairing or replacing an insufficient line or division fence. **Fogle v. Malvern Courts, Inc.**, 722 A.2d 680, 684 (Pa. 1999); 29 P.S. § 41.

certificate line), and (c) [the Croners] had enjoyed the benefit of the sufficient replacement fence from the time that it was constructed in 1992 until it was damaged in June 2014, or [22] years later. . . .

Additionally, as a result of [the fence's] age and [the] damage to the fence wires, [the trial court] held in the [September 20, 2016] memorandum and order that the fence had once again become insufficient for its intended purpose of containing livestock[. The trial court] ordered another report detailing a fence viewing, a survey, a determination as to whether the fence was again in need of repair or replacement, and the estimated costs associated therewith [(hereinafter "the Fence Viewer's Report"). The trial court] authorized [the Croners] to repair or replace the fence where necessary in accordance with the Fence Viewer's Report, and ordered [Appellants] to pay for one-half of the costs, minus a credit to [Appellants] of $579.86. This credit represented one-half of the cost previously incurred by [Appellants] in constructing the replacement fence in 1992, and for which, pursuant to 29 P.S. § 41, [the Croners were] responsible.

Trial Court Opinion, 11/19/18, at 1-3 (some capitalization omitted).

Appellants filed a notice of appeal from the trial court's September 20, 2016 order and claimed that the trial court erred in holding that Appellants had "a duty to pay any portion of the erection and maintenance of a line fence when they do not keep livestock on their property." *Croner v. Popovich*, 175 A.3d 1042 (Pa. Super. 2017) (unpublished memorandum) at 2, *appeal denied*, 179 A.3d 4 (Pa. 2018). On August 1, 2017, a panel of this Court affirmed the trial court's order on the merits. We concluded that, pursuant to 29 P.S. § 41 and the Pennsylvania Supreme Court's opinion in *Fogle v. Malvern Courts, Inc.*, 722 A.2d 680 (Pa. 1999), Appellants were obligated to pay for one-half of the cost of the line fence. *Croner v. Popovich*, 175

- 3 -

A.3d 1042 (Pa. Super. 2017) (unpublished memorandum) at 1-10, *appeal denied*, 179 A.3d 4 (Pa. 2018). The Pennsylvania Supreme Court denied Appellants' petition for allowance of appeal on January 11, 2018. ***Id.***

The Croners then "had the fence reconstructed along the line set forth by the surveyor." ***See*** the Croners' "Motion to Establish Damages and Compel Payment" (hereinafter "Motion to Compel"), 6/5/18, at ¶ 4.

On June 5, 2018, the Croners filed their Motion to Compel. Within the motion, the Croners requested that the trial court order Appellants to pay $5,175.24, as that amount constituted Appellants' "one-half [] share of the fence reconstruction costs." Motion to Compel, 6/5/18, at ¶ 11 and "Wherefore" Clause. Further, the Croners attached a "cost share calculation" to their Motion to Compel. ***See id.*** at Exhibit "A". The cost share calculation declared that the total fence replacement expenses comprised $7,484.20 in engineering costs and $4,026.00 in labor and materials. ***Id.*** After allowing for Appellants' $579.86 court-ordered credit, the cost share calculation stated that Appellants' one-half share of the fence replacement costs was $5,175.24. ***Id.***

The trial court scheduled argument on the Motion to Compel for August 21, 2018. Trial Court Order, 6/11/18, at 1.

On August 21, 2018, the trial court heard argument on the Croners' Motion to Compel. During the argument, the Croners' attorney (hereinafter "the Croners' Attorney") referred the court to the Fence Viewer's Report, which

was prepared by Registered Professional Land Surveyor John Joseph Cenkner,

Jr.  This report declared:

<u>FENCE VIEWER'S REPORT</u>
Line Fence Between
James E. Croner and Jonathan H. Croner, Owners
& Samuel Popovich, et al, Owners
Brothersvalley Township, Somerset County, PA

I, JOHN JOSEPH CENKNER, JR., a Registered Professional Land Surveyor, do hereby certify that:

1. On Tuesday, November 22, 2016, I have viewed and examined the line fence as it currently exists separating the property of Messrs. James E. Croner and Jonathan H. Croner, co-owners, and the property of Samuel G. Popovich and Cathy J. Popovich, husband and wife, Joseph Popovich, single, and Frank Popovich, Jr., single, owners, located in Brothersvalley Township, Somerset County.  I performed my fence viewing for the purposes of determining the status of the line fence as directed by Order dated September 19, 2016, of the Court of Common Pleas of Somerset County, PA, case 221 Civil 1991.

2. I viewed and examined the fence line, assisted by Ms. Jeanne Johnson, also of R.D. Fogle Engineering.  My fence viewing began at approximately 9:00 a.m. and ended at approximately 11:00 a.m. on November 22, 2016.  Messrs. James E. Croner and Jonathan H. Croner were present during my fence viewing, along with two representatives from a fence contracting company.

3. Based upon my viewing on November 22, 2016, I have concluded that the line fence is beyond repair and is in need of reconstructing along its entire length of 1278 ft.  The entire fence is in very poor condition.  The fence posts are deteriorated and/or rotting and the barbed wire strands are badly rusted or missing in several sections.  The age of the fence is approximately [25] years and in my professional opinion has outlived its useful life and is no longer sufficient to contain livestock.

> 4. I have estimated probable costs of reconstructing the line fence as set forth in EXHIBIT A attached to this Report.
>
> . . .

Fence Viewer's Report, 5/17/17, at 1 (bolding omitted).

During the August 21, 2018 argument, the Croners' Attorney attested that "the actual cost of the [fence] reconstruction [by Green Mountain Construction] was [$4,027.26]" and that Appellants' "one-half share of the construction costs is $2,013." N.T. Argument, 8/21/18, at 4-5. Further, the Croners' Attorney attested that Appellants were also responsible for paying $3,742.10, which constituted "one-half of the adjusted engineering fee." *Id.* After subtracting Appellants' allowable credit, the Croners' Attorney requested that the trial court order Appellants to pay a total of $5,175.24 for their one-half share of the cost of reconstructing the fence. *Id.* at 5.

At argument, Appellants' counsel (hereinafter "Appellants' Counsel") objected to or contested the Fence Viewer's Report on three grounds. First, Appellants' Counsel declared: "[m]y client did not receive [the Fence Viewer's Report] until today; and, quite frankly, my client objects – or objects to that report being used as for not having time to respond to that report." *Id.* at 6. Second, Appellants' Counsel claimed that the Fence Viewer's Report was inaccurate, as "not all portions of that fence were unusable." *Id.* Finally, Appellants' Counsel argued that 29 P.S. § 41 limits the Fence Viewer's fee to $25.00; therefore, Appellants' Counsel argued, even if Appellants were obligated to pay for one-half of the line fence reconstruction costs, the engineering fee was capped at $25.00. *Id.* at 6-7.

The Croners' Attorney responded to Appellants' Counsel's arguments. First, the Croners' Attorney informed the trial court: "my file reflects that . . . [the Fence Viewer's Report] had been previously provided to [Appellant's Counsel] in correspondence dated August of last year when we gave notice that we were intending to begin construction [of the fence] in the near future." *Id.* at 8. In support of this assertion, the Croners' Attorney read the court a letter, dated August 22, 2017, which he sent to Appellants' Counsel. The Croners' Attorney stated that the letter read:

> It's been 11 months since [the trial court] entered an order. The [Croners] were permitted to repair the fence pursuant to the Fence Viewer [R]eport previously supplied to you. Please consider that your client knows that my client . . . [does] intend to begin construction on that fence.

*Id.* at 9 (some capitalization omitted).

As to Appellants' claim that the engineering fees are statutorily capped at $25.00, the Croners' Attorney argued that, while 29 P.S. § 41 limits a surveyor's fees to $25.00 when the surveyor is "acting as a fence viewer," the statute does not limit all engineering fees. *Id.* at 10-11. The Croners' Attorney argued that, in this case, the engineer was required to reestablish the "certificate line" over which the line fence would follow. *Id.* Further, the Croners' Attorney argued, the engineering work performed in this case cost a substantial amount money, was not included in the surveyor's duties as a "fence viewer," and, pursuant to 29 P.S. § 41, must be shared between the Croners and Appellants as the cost of the line fence. *See id.*

At the end of the argument, the trial court concluded that: "the Fence Viewer's [R]eport was provided to [Appellants] in a reasonable time frame and that [Appellants] had notice of the findings of the report and the proposed work to be done;" the $25.00 cap only applied to the surveyor's duties as a "fence viewer" – not to all of the engineering work necessary for reconstructing the fence; and, Appellants were liable to the Croners in the amount of $5,175.24. *Id.* at 13-17.

Appellants filed a timely notice of appeal. They number four claims in their statement of questions presented:[2]

> [1.] When the [trial] court did not hear testimony as to whether or not the [Croners] had served the Appellants with the Fence Viewer Report prior to the hearing, did the [trial] court commit a procedural error, err as a matter of fact and law, was arbitrary and capricious and based the [trial] court's decision on facts not supported by the record when the [trial] court determined that the Appellants had received said document without said facts being properly placed and admitted into the record?
>
> [2.] Did the [trial] court violate the Appellants' due process rights when the [trial] court admitted the Fence Viewer Report into the record without testimony of an expert witness and a hearing to allow the Appellants to cross examine witnesses and experts, when the Appellants lodged a timely objection that was overruled by the [trial] court that the Appellants did not previously receive the report?
>
> [3.] When the Appellants did not receive the Fence Viewer Report prior to the construction of the fence as required by 29 P.S. [§] 41, did the [trial] court commit a procedural error, err as a matter of fact and law, was arbitrary and capricious and based the [trial] court's decision on facts not supported

_____

[2] For ease of discussion, we have re-numbered Appellants' claims on appeal.

by the record when the [trial] court ruled that the Appellants had obeyed the statute?

[4.] Did the [trial] court err as a matter of law and fact, was arbitrary and capricious, and based the [trial] court's decision on facts not supported by the record when the [trial] court awarded the [Croners] the cost of surveying of the fence line, when 29 P.S. [§] 41 allows for the charge of the surveyor to provide a report of the fence line not to survey the property lines?

Appellants' Brief at 2-4 (some capitalization omitted).

Appellants' first two claims on appeal contend that the trial court erred when it did not hold an evidentiary hearing on: "whether or not [Appellants] received the [Fence Viewer's] Report prior to" the August 21, 2018 argument and the actual merits of the case. **See id.** at 8-11 and 15-17. These claims are waived.

At no time prior to or during the August 21, 2018 argument did Appellants' Counsel ever object to the current matter being adjudicated through argument and attorney attestations - and at no time did Appellants' Counsel ever demand a hearing on any matter before the trial court. **See** N.T. Argument, 8/21/18, at 1-17; **see also** Trial Court Order, 6/11/18, at 1 (the trial court order clearly scheduled the matter for an August 21, 2018 argument – not a hearing). Therefore, Appellants waived any appellate claim that the trial court erred when it did not hold an evidentiary hearing on either the merits of the case or the issue of whether Appellants received the Fence Viewer's Report prior to the August 21, 2018 argument. **State Farm Mut. Auto. Ins. Co. v. Dill**, 108 A.3d 882, 885 (Pa. Super. 2015) (*en banc*) ("[i]t

is axiomatic that in order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.  On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated") (quotations, citations, and corrections omitted); ***Commonwealth v. Chamberlain***, 30 A.3d 381, 405 (Pa. 2011) (defendant waived appellate review of state due process claim that was not directly raised before the trial court); Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

For Appellants' third claim on appeal, Appellants argue that the trial court erred when it accepted the Fence Viewer's Report, as the Croners "did not produce the Report until the day of the" argument.  Appellants' Brief at 12.  According to Appellants, this caused them unfair surprise and prejudice, as they were "unable to produce an expert report to refute the report of" the Croners.  ***Id.*** at 14.

Appellants' claim on appeal immediately fails because the trial court specifically concluded that "the Fence Viewer's [R]eport was provided to [Appellants] in a reasonable time frame and [Appellants] had notice of the findings of the report and the proposed work to be done."  N.T. Argument, 8/21/18, at 14.  On appeal, Appellants do not claim that the trial court erred in arriving at this factual conclusion.  ***See*** Appellants' Brief at 11-15.  Rather,

Appellants simply ignore the trial court's express factual finding and base their entire argument upon the faulty premise that the Croners "did not produce the Report until the day of the" argument. **See id.** Since Appellants' claim is based upon a fundamentally erroneous proposition, the claim necessarily fails.

Finally, Appellants claim that the trial court erred when it "awarded [the Croners] the cost of surveying [] the fence line, when 29 P.S. § 41 allows for . . . the surveyor to provide a report of the fence line[,] not to survey property lines." Appellants' Brief at 4 and 17. This claim fails.

29 P.S. § 41, entitled "Division fences; proceedings to compel erection or part payment," provides:

> From and after the passage of this act, owners of improved and occupied land shall erect and maintain an equal part of all line or division fences between them, nor shall any such owner be relieved from liability under the provisions of this act except by the consent of the adjoining owner. And if any owner of such improved and occupied land shall fail or neglect to erect or maintain his, her, or their share of such line or division fence the party aggrieved shall notify the county surveyor or, if there is no county surveyor in the county, then a county surveyor of any adjoining county, or, if the county surveyor in any adjoining county refuses to act, a surveyor appointed by a judge of the court of common pleas, who shall act as a fence viewer and whose duty it shall be to examine such line or division fence, so complained of; and if he finds said fence sufficient, the complainant shall pay the cost of his service; but if he finds such fence insufficient, he shall so report to a justice of the peace[fn.1] or alderman, residing in the county where such fence is located, designating points and distances of such fence, whether a new fence is required or whether the old one can be repaired, and the probable costs of a new, or the repair of the old, fence; and said justice or alderman shall notify the delinquent owner of such improved and occupied land of the surveyor's report, and that his part of said fence, as found by the surveyor, be erected

- 11 -

or repaired within forty days from the date of such notice; and if such notice be not complied with, the aggrieved party may cause said line or division fence to be erected or repaired, and the costs thereof collected, including the charge of the surveyor, from the delinquent owner of such improved and occupied land, as other debts are collected by law. The surveyor shall be entitled to such payment for acting as a fence viewer as he may fix, not, however, exceeding twenty-five dollars. Where the surveyor reports that he finds the fence complained of sufficient, the amount payable to the surveyor shall be paid by the complainant, but where he reports the fence insufficient, the amount payable to him shall be paid by the delinquent owner of such improved or occupied land: Provided, That no owner of improved land shall be compelled to build or repair fence during the months of December, January, February, and March: And provided further, That nothing herein contained shall be construed to apply to railroad companies.

> [fn.1] Now magisterial district judge. **See** 2004, Nov. 30, P.L. 1618. No. 207, § 28(1).

29 P.S. § 41.

Our Supreme Court explained the history and purpose behind Pennsylvania's Fence Law:

During the eighteenth and nineteenth centuries, almost every landowner kept some form of livestock on his property and the common law did not require such landowners to fence their land in the absence of an agreement between the adjoining owners. However, the common law did encourage landowners to fence their properties by applying the rule of strict liability for any damages caused by their animals if they trespassed onto another's land. Eventually, many states, including Pennsylvania, enacted laws combining a duty to fence with the concept of strict liability to create a firm set of rules which would prevent disputes concerning the liability for damages to crops or other property caused by livestock. Specifically, the only discernible purpose of Pennsylvania's Fence Law has been to resolve disputes involving trespassing livestock. This purpose is indicated in the preamble of the first such law:

> For preventing all disputes and differences that may arise through the neglect or insufficiency of fences in this province and counties annexed, Be it enacted, that all cornfields and grounds kept for enclosures . . . shall be well fenced. . . .

1700 Pa. Laws 13, § 1.

*Fogle v. Malvern Courts, Inc.*, 722 A.2d 680, 682-683 (Pa. 1999) (quotations and citations omitted).

On appeal, Appellants claim that 29 P.S. § 41 limits the surveyor's permissible actions in any proceeding under the Fence Law. *See* Appellants' Brief at 18-19. Specifically, Appellants claim, the language of Section 41 limits the surveyor's permissible actions to the mere "inspect[ion of] the condition of the fence." *Id.* at 18. According to Appellants, the surveyor in this case exceeded his statutory authority by conducting a "survey [of] the property line." *Id.* Appellants claim that, since "[t]he surveyor did more than review the condition of the fence line . . . and surveyed the property line, which is not covered by the statute," the surveyor exceeded his statutory authority and the trial court erred in requiring Appellants to pay for one-half of the surveyor's fee. *Id.* at 18-19. This claim cannot succeed.

At the outset, we note that – while Section 41 defines the duties of a surveyor who is "act[ing] as a fence viewer" – Section 41 does not, in any way, limit a surveyor's general authority to act. We further note that Section 41 only places a $25.00 cap on surveyor fees when the surveyor is "**acting as a fence viewer**." *Id.* (emphasis added). Thus, the statute does not cap

the fees that a surveyor may charge for surveying and engineering work that fall outside of his express and statutorily-delineated duties as "fence viewer." *See id.*

Within Appellants' brief, Appellants acknowledge that the engineering fee was for work that fell outside of the surveyor's statutorily-delineated duties as "fence viewer." Appellants' Brief at 18 ("[t]he statute states that the [surveyor's] 'duty shall be to examine such line or division fence,' meaning the surveyor is to examine the fence line and report on the condition of the fence. . . . The surveyor did more than review the condition of the fence line, the surveyor surveyed the property line, which is not covered by the statute"). Therefore, on appeal, we assume (without deciding) that the engineering fee was for work that fell outside of the surveyor's duties as a "fence viewer." *See Steiner v. Markel*, 968 A.2d 1253, 1256 (Pa. 2009) ("[the Pennsylvania Supreme Court] has consistently held that an appellate court cannot reverse a trial court judgment on a basis that was not properly raised and preserved by the parties").

Given the posture of this case, Appellants' claim that the trial court erred in requiring that they share in the engineering costs simply cannot succeed. To be sure, Section 41 demands that owners of adjacent land share, equally, in the costs of erecting, repairing, and maintaining a line fence. *See* 29 P.S. § 41. Where surveying or engineering work is necessary to erect or repair a line fence – and where that work falls outside of the surveyor's statutorily-defined duties as a fence viewer – the fees for that work must

necessarily be shared equally between the land owners, just as the land owners must share, equally, in the labor and material costs for the fence. Certainly, whatever the label, the fees for the work constitute "the costs" of erecting or repairing the fence. *See id.* Appellants' claim to the contrary fails.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/2019